WILLIAM T. VINCENT and wife *vs.* GEORGE PLATT,
Late Sheriff.

If land of a decendant be sold on judgment, and execution against his executor, the surplus is payable to the executor and not to the heir.
The executor may be required to give further security.

CASE stated; amicable action.

Frederick Ford died the 10th of June, 1837, leaving a wife, Hannah, who died the 19th of February, 1838, and two children, Emily Ford and Hannah F. Ford, now wife of William T. Vincent. Frederick Ford, by will dated 3d May, 1837, devised that his real estate be rented until his youngest child attained twenty-one, the rents to be divided between his wife, Hannah Ford, and his daughters Emily Ford and Hannah F. Ford, and if either of his children died before twenty-one, their portion to go to their heirs, if any; if not, their portion to go to the survivor, if they see proper; when they attain twenty-one, they may sell or do as they think fit.

James Giffen, executor, administered. An amicable action was brought to May term, 1846, at the suit of Mary Drummond *vs.* James Giffen, executor of F. Ford, deceased, and judgment at Nov. term, 1846. A writ of fi. fa. was issued, on said judgment, which was levied on land of F. Ford, which was condemned and sold by defendant, as sheriff on venditioni exponas, on the 2d August, 1847. The sale was confirmed, and the sheriff paid the judgment of Mary Drummond, $146,60, and the surplus $1,830 to James Giffen, executor as aforesaid, who carried the same into his administration account. The question was, whether the payment to Giffen,

the executor, was a lawful and valid payment, as against the devisees of the land sold.

*Bayard.*—The question is, whether after a sale of land by the sheriff on a judgment against an administrator or executor, the surplus (after paying the judgments) is payable to the heir or to the executor of the defendant. The sheriff paid the money to the attorney of the administrator claiming it as such. (*Dig.* 204. *s.* 6, 207.) On the common law principle, the balance would belong to the heir-at-law, and assumpsit would lie for it. The act requires the surplus to be paid to the debtor or defendant. Who is the debtor? The heir, who would be liable to pay, with assets descended. The executor has a special mode of obtaining possession of real estate for payment of debts; but before he gets the money he must give security. What would be the result, if on a sheriff's sale the surplus shall be paid to the administrator without security? The necessity of a law to enable an administrator to sell real estate for payment of debts, and requiring security, shows that he is not entitled to proceeds of land in any other way. The executor is neither defendant nor *debtor*. The land is the debtor, and the heir who owns the land. If the money is paid to the administrator, his bond does not secure it, and the heir, (if a minor especially,) would be ruined But it may be said, what will become of the creditors if there be debts? They or the administrator could go into chancery, or to the court where the sale is returned, and on affidavit of debts, stay the money for payment of them; or the administrator might perhaps go into the Orphans' Court and get an order for the payment of proceeds to him, to discharge debts, on his giving security. The old Supreme Court decided that surplus money arising on a sale under a mortgage, was payable to the heir and not to the administrator. I think there is no distinction.

*Mr. Gray.*—This is an important question. It has long been the practice to pay to administrators in like cases, and it has resulted in no inconvenience. It has been very convenient to creditors. (3 *Harr. Rep.* 391–2.) This land, sold on a venditioni exponas to Nov. term, 1847, for $2,037,00 on a judgment of $134,82. The parties were Mary Drummond *vs.* James Giffen, executor of Frederick Ford. The heirs at law were no defendants nor parties. By what rule was the sheriff to be governed?

"Section 6. He must render the overplus to the debtor or defendant." How could he pay otherwise than he did in this case, to the

executor of Frederick Ford, deceased, who was the defendant and debtor?

But says the counsel, it ought to have been paid to the devisees, under the will of Frederick Ford, deceased. How could the sheriff do that, when he is required to pay it to the defendant? Money may be considered as land in certain cases; but it can be only in a court of equity. For the payment of debts, the money does go into the executor's hands rightfully and would bind his sureties. It would also be the duty of the register to require of him further security. This is provided for by the act of assembly. The land being sold under lawful authority, its character was changed. The proceeds is money and not land; and its application provided for.

2. Under the will of Frederick Ford, the devisees have not an indefeasible title, and could not receive the proceeds absolutely. What right has the sheriff to pay to the devisee absolutely the proceeds of that which was devised to her, sub modo only? and to pay her also during her minority? What injury has been done by paying the money to the executor? He has accounted for it, and is perfectly solvent. Why should the sheriff be required to pay it again? If he paid it to the executor in mistake of the law, he is without remedy. The parties are not. They can pursue these proceeds in the hands of the executor.

*Bayard*, in reply.—It is not for the court to consider whether the sheriff can recover it back or not; the question is, who is he bound to pay the surplus to. He has no cause of complaint, if he chooses to decide a legal question for himself, instead of asking the court to decide it for him. He has the option to bring it into court, and let claimants contest it. As to practice, it has little weight, unless tested. It would seldom happen that there was much overplus, and where there was an administrator and a claim from heirs.

I made the very question before the late Supreme Court, and they decided in favor of the devisee or heir. The question arose, to be sure on a mortgage; but there can be no difference as to this question. I give up the case if the court *can* hold this surplus to be within his bond, if paid to an administrator. (*Digest* 220.)

Lands are not *chattels*, as is sometimes inconsiderately said. They are liable to be sold for payment of debts in certain modes, but only in those modes.

Mr. Gray prudently abstained from any reference to the common law principle that an administrator has nothing to do with real

estate, which belongs to the heir or devisee. All the power of the executor over it is conferred by act of assembly. He may receive rents for certain purposes, and is made liable for them. He may, in a certain way, obtain authority to sell the land for payment of debts, and then he is liable for the application of the proceeds, he giving fresh security. How can the executor be said to be the debtor or defendant in reference to this matter? If he was such debtor, he could confess a judgment to bind the land, which he cannot do. As to contrary practice, but one case is cited, and the question as to the heir's claim was not there made; the utmost extent of this is a conflict of professional opinion, leaning perhaps on that side. It cannot be that my land shall be converted, and the proceeds paid to another, without security. If the executor has a right to receive it, if there are other debts, he may equally receive it where there are none, and the heir would be deprived of his property without security and without object, otherwise than to give the executor commissions on that which he ought not to receive.

2. As to the will—it creates a base or conditional fee in each of the children, to be defeated on a contingency. And if the devisee was not entitled to an absolute right to the land, those who have an interest can go into chancery and have the fund protected. It is nothing to the sheriff that a contingent remainderman is interested in the fund. He is to pay it to the devisee; other parties must protect themselves.

*By the Court:*

BOOTH, *Chief Justice.*—By the common law, lands were not liable for the debts of deceased persons, unless the heir was bound for their payment, by the deed of his ancestor; and in such case, he was bound only to the extent of the real estate which descended to him. The personal estate in the hands of the executor or administrator, was the fund for the payment of debts. In case of its deficiency, the creditors by simple contract lost their debts; because however great might be the value of the land, they could not have recourse to it. In this State, at a very early period under the Proprietary Government, the common law in this respect, was entirely changed. Laws were enacted, which made lands as liable for the payment of debts as chattels; and subjected them to be taken and sold upon execution process; or to be sold by executors and administrators for the debts of their decedents. It appears to have been the prac-

tice prior to the year 1720, for executors and administrators to have the lands of their testators or intestates appraised with the personal estate; and to account for their value, in the payment of the debts, or maintenance of the children of the deceased. By acts of the Colonial Legislature, passed in 1693, 1697 and 1700, (*vol.* 1, *Delaware Laws, Appendix,* 20, 24, 26,) it was expressly declared that all real and personal estate should be liable to be seized and sold by the executor or administrator of the deceased, by any lawful deed or conveyance duly executed, approved and acknowledged in open court; or by the judgment of a court of record; for the payment of the decedent's debts. By subsequent acts, executors and administrators were restricted in the exercise of this power; and were prohibited from selling the land of their testators or intestates, unless an order of the Orphans' Court was first obtained, upon exhibiting an inventory, and an account of the debts of the deceased; and showing that the personal estate was insufficient for their payment. It does not appear by any law on our statute book, until the act of 1829, (*Dig.* 234, *sec.* 4,) that the executor or administrator was required to give security to pay the debts out of the money arising from the sale, or to pay the surplus to the heir or devisee. The executor or administrator was the only person against whom suits were instituted for the recovery of debts due from the deceased. A judgment upon a verdict in such suits, or upon the confession of the executor or administrator, or upon the award of arbitrators, was a lien upon the lands of the testator or intestate; although at present, no judgment against an executor or administrator binds the land, unless rendered upon a verdict, or upon the award of arbitrators appointed in the mode prescribed by the eleventh section of the act, on page 225 of the Digest. The land of the deceased, although it might be in the occupation of the devisee or heir, always was, and now is, a fund in the hands and under the control of the executor or administrator, for the payment of debts; and until payment of them be made, neither the devisee nor heir can have any part of the real estate. By the act for taking lands in execution for the payment of debts, passed in 1728, and now in force, (*Dig.* 204,) all lands and tenements, where no sufficient personal estate can be found, were made liable to be seized and sold upon judgment and execution. By the sixth section, if the sale of the lands exceeds the debts or damages and costs, the sheriff must render the overplus to the *debtor* or *defendant;* and then, and not before, he shall be dis-

charged thereof, upon the record of the court to which he makes
return of the execution. The land being thus converted into money,
the surplus becomes personal estate. To whom then, is this surplus
to be paid? To the executor or administrator, in whose hands it
is answerable for the payment of debts; or to the devisee or heir,
who is not entitled to an appropriation of any part, either of the
real or personal estate, until the debts of the decedent have been
paid? If the sheriff pays the devisee or heir, the payment is in
opposition to the express words of the sixth section of the act of as-
sembly, and cannot discharge the sheriff; because the devisee or
heir is neither *the debtor*, nor *the defendant*. The heir may not be
known; he may be out of the State; and in many cases it might be
difficult to decide who is entitled as heir. But the executor or ad-
ministrator is always ascertained by the record; is the only person
entitled to the personal estate; and is bound to apply it in payment
of debts. Under our practice, he is the only person against whom
a suit is usually brought for claims against the estate; and although
an action may perhaps, under some circumstances, be maintained
against the devisee or heir alone, for the debt of the testator or in-
testate; such an action has been seldom, if ever, instituted. Upon
the insufficiency of the personal estate, the law converts the
real into personal estate, for the purpose of paying debts. When
that purpose is accomplished, any surplus that may remain, will
belong to the person who was entitled to the land, at the time of the
conversion. But whether there will be any surplus after the pay-
ment of the debts, cannot be ascertained, until the executor or ad-
ministrator has made a final settlement of his administration ac-
counts; and until then, neither the heir nor devisee is entitled to
the money. It is urged in the argument of the present case, on be-
half of the plaintiffs, that as the executor or administrator has not
given security for the surplus arising under an execution, it ought
not to be paid into his hands, because it may be lost by his insol-
vency, or be squandered. The same objection applies with equal
force to the devisee, and to the heir. If any such damage is to be
apprehended by payment to the executor or administrator; or if the
debts of the deceased have been discharged; the devisee or heir, or
if such devisee or heir be under the disability of infancy or cover-
ture, the guardian or husband, ought to give notice in writing to the
sheriff, not to pay the surplus to the executor or administrator; but
to bring it into court. Upon a proper case being made out, the

court would require the executor or administrator to give sufficient security; or if it clearly appeared, that all the debts of the deceased had been discharged, would direct the surplus to be paid to the devisee or heir; or, if there were even a remote probability that any debts remained unpaid, would require him to give security.

In the case before the court, it appears that the executor has passed a further administration account before the register of New Castle county, in which he has charged himself with the surplus received from the sheriff. The plaintiffs have the right to apply to the register to order the executor to give further security. It appears that they permitted the sheriff to pay the surplus to the executor, without giving him notice or making an objection; and nothing is shown to this court, to create even a doubt, as to his ability to discharge his trust; or as to his fidelity.

*The Court* are of opinion, that the payment made by the defendant, as sheriff, to the executor of Frederick Ford, deceased, is a legal payment; and therefore, that judgment be rendered for the defendant.

*Mr. Bayard,* for the heirs.

*Mr. Gray,* for the sheriff.